IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUY YOUNG,

     Plaintiff,

v.                                   Case No. 22-CV-161-JCH-LF

M SHIPMAN, FNU BROWN,
GARY MACIEL*,*

     Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendants Mark Shipman and David Brown's Motion for Summary Judgment (Doc. 14) and Defendant Gary Maciel's *Martinez* Report (Doc. 15), both filed on July 25, 2023, and on Plaintiff Guy Young's Affidavit (Doc. 50), which the Court construes as a Rule 56(d) affidavit, filed January 19, 2024. Mr. Young responded to Defendants Shipman and Brown's motion on September 28, 2023 (Doc. 35), and Defendants replied on October 12, 2023 (Docs. 40, 42). Defendants Shipman and Brown responded to Mr. Young's affidavit on January 25, 2024 (Doc. 51). Having considered the parties' submissions and the relevant law, I recommend that the Court GRANT Defendants Mark Shipman and David Brown's Motion for Summary Judgment in part and DENY it in part. Defendant Gary Maciel asks the Court to dismiss the claims against him pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. *See* Doc. 15 at 2–5. I recommend that the Court GRANT this request and dismiss all Mr. Young's claims against defendant Maciel. Finally, I DENY Mr. Young's Rule 56(d) motion.

I. **Statement of Undisputed Facts**[1]

Plaintiff Guy Young is an inmate in the custody of the New Mexico Corrections Department ("NMCD"), confined at the Lea County Correctional Facility ("LCCF"). UMFs 1, 2, 35. At all times relevant to Mr. Young's amended complaint, defendant David Brown served as the Associate Facility Administrator of Programs ("AFA") for LCCF. UMF 4. Until March 2022, defendant Mark Shipman served as the Chaplain for LCCF. *Id.* Both AFA Brown and Chaplain Shipman were employed by the GEO Group, Inc. ("GEO"), a private contractor that provides certain management and operations services at LCCF. UMFs 3, 4. As employees of GEO at LCCF, AFA Brown and Chaplain Shipman were required to adhere to NMCD policies and procedures. UMF 5.

NMCD Policy CD-101300 governs religious programming at LCCF. UMF 6. NMCD Policy CD-101100 provides specific programming and privileges for inmates who have been verified as adherents of a Native American religion.[2] UMFs 6, 7. Verified inmates may participate in Native American religious programming that includes talking circles and sweat lodge ceremonies. UMF 8. Verified inmates also may seek permission to keep certain religious items in a medicine pouch on their persons and/or in a spiritual bundle in their cells. UMFs 11,

---

[1] Defendants Shipman and Brown provide a statement of undisputed material facts (UMFs) in their *Martinez* Report. *See* Doc. 13 at 3–13. Defendant Maciel's *Martinez* Report does not contain a statement of undisputed material facts. *See* Doc. 15. Likewise, Mr. Young's Response does not contain a statement of additional material facts. Thus, all citations to UMFs are to the UMFs in Defendants Shipman and Brown's *Martinez* Report. *See* Doc. 13 at 3–13.

For facts that the parties say they dispute or partially dispute, or which are not cited in the materials, the Court cites to the underlying exhibits and other materials in the record, as necessary. *See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

[2] This policy, confusingly entitled the "Native American Counseling Act," appears to implement the statute bearing the same name. *See* Doc. 13-4; N.M. STAT. ANN. §§ 33-10-1 to 33-10-4.

12. Among other significant items, Native American inmates who are granted such permission may keep, but not smoke, "Mountain Smoke/Tobacco Blend," despite a broader policy that prohibits inmates from possessing any tobacco products. UMFs 11–15. Because tobacco is valuable contraband among the broader population at LCCF, prison administrators carefully control the dissemination of tobacco for religious programming purposes to safeguard the security of the facility. UMF 16.

Since 2018, Mr. Young has had permission to wear a medicine bag that could contain tobacco. UMFs 15, 19; Doc. 1-2 ¶ 8; Doc. 35 at 15. The use of tobacco as a vessel for Mr. Young's prayers is essential to meaningfully practicing his sincerely held religious beliefs. Doc. 1-2 ¶¶ 7, 13; Doc. 35 at 3. When he has access to tobacco, Mr. Young prays on it between sweat lodge ceremonies and then smokes it at a subsequent sweat lodge ceremony to deliver his prayers to his Creator. Doc. 1-2 ¶ 13; Doc. 35 at 3. Mr. Young has not asked to smoke tobacco anywhere other than in the sweat lodge area. Doc 1-2 ¶ 40; Doc. 35 at 3, 17.

Mr. Young arrived at LCCF in early 2020 and, upon entering custody, was provided information about LCCF's grievance procedure. UMF 35. On May 5 and May 7, 2020, he filed informal grievances complaining that the Chaplain was not conducting a weekly talking circle for Native American inmates. UMFs 36, 37. On May 7 and May 12, 2020, he filed informal grievances complaining that he was not given enough sacred tobacco for a proper sweat lodge ceremony as well as weekly prayers. UMFs 38, 39. In response, the Chaplain referred Mr. Young to AFA Brown. UMF 38. On May 15, 2020, Mr. Young filed two formal grievances: one complained again about the lack of weekly talking circles, and the other complained again about the lack of adequate tobacco for his religious needs. UMFs 40, 41. Both complaints were returned by the grievance officer because they identified multiple dates as the date of incident, in violation of the NMCD grievance policy and procedure. *Id.* On August 17, 2020, Mr. Young again

submitted an informal grievance complaining that he was not provided sufficient tobacco to conduct a proper sweat lodge ceremony and weekly prayers. UMF 42. On August 31, 2020, he submitted an informal grievance complaining that LCCF was giving him weeds instead of proper tobacco. UMF 43. Both complaints made in August were returned because no date of incident was identified. UMFs 42, 43.

In September 2020, NMCD officials instructed LCCF staff to halt all extracurricular activities, including congregate religious activities, due to an outbreak of COVID-19 at LCCF. UMF 27. Per this instruction, no sweat lodge ceremonies were held at LCCF until May 2021, when they resumed on a modified schedule. UMF 28. On April 22, 2021, Mr. Young filed an informal grievance complaining that the LCCF Chaplain had failed to provide him with sacred tobacco and so denied his ability to pray. UMF 44. In response, Chaplain Shipman informed Mr. Young that sweat lodge ceremonies would resume on May 1, 2021, and that he would be able to order tobacco and herbs for religious purposes. UMF 45. On May 17, 2021, Mr. Young filed a formal grievance complaining that Chaplain Shipman had provided insufficient tobacco at the sweat lodge ceremony and, consequently, none of the participants had tobacco to pray on during the week. UMF 46; Doc. 13-24 at 1. This grievance was accepted for consideration, and Chaplain Shipman referred the grievance officer to Chaplain Shipman's response to Mr. Young's April grievance. UMF 46; Doc. 13-24 at 3. The grievance officer responded to Mr. Young by reminding him "that the only authorized time for tobacco is during the sweat lodge ceremony. Tobacco is not permitted to be smoked anywhere else and, therefore the amount given is sufficient for the service." UMF 46. Mr. Young appealed this resolution, which was denied by defendant Gary Maciel, Director of Adult Prisons for NMCD. UMF 47. Mr. Young thereby exhausted the grievance process with respect to this grievance. UMF 48.

II.    **The Complaint and Defendants' Motion**

In his amended complaint, Mr. Young chiefly alleges that Defendants have, by failing to provide to him sacred tobacco upon which to pray between sweat lodge ceremonies since May 2021, imposed an "[u]nlawful restriction on [his] sincerely held religious beliefs." Doc. 1-2 at 1. He also alleges other burdens on his religious exercise for which, as explained below, he has not exhausted his administrative remedies.[3]  Based on these burdens, he pleads claims under:

1.  The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5;

2.  The New Mexico Religious Freedom Restoration Act ("NMRFRA"), N.M. STAT. ANN. §§ 28-22-1 to 28-22-5;

3.  The Native American Counseling Act ("NACA"), N.M. STAT. ANN. §§ 33-10-1 to 33-10-4; and

4.  The New Mexico Constitution article II, section 11 and article XXI, section 1.

Doc. 1-2 at 1. In addition to compensatory and punitive damages, Mr. Young seeks an injunctive order that, presumably, would require Defendants to provide him with tobacco for prayer during the week. *Id.* at 11. Mr. Young's amended complaint, which was subscribed and sworn before a Notary Public, *see id.*, is "verified" and "treated as an affidavit for purposes of summary judgment" to the extent it alleges facts based on his personal knowledge. *Vette v. K-9 Unit Dep. Sanders*, 989 F.3d 1154, 1163 (10th Cir. 2021).

---

[3]  These allegations include that Mr. Young was not provided access to a sweat lodge until May 2021, *id.* at 3–4; the mixture of herbs and tobacco provided prior to September 2020 was not suitable for Mr. Young's religious exercise, *id.* at 4; no access to tobacco was provided between September 2020 and May 2021, *id.* at 5; and AFA Brown obstructs Native American religious practice by requiring inmates or their families to purchase herbs from an unaffordable vendor, *id.* at 10.

Defendants Shipman and Brown's Motion for Summary Judgment seeks summary judgment on each of Mr. Young's claims.[4] *See* Doc. 14. Their *Martinez* Report, filed concurrently, provides the statement of undisputed material facts and a range of affidavits and documentary evidence. *See* Doc. 13. Their reply provides one further affidavit. *See* Doc. 40-1. Mr. Young's response does not itself contain any affidavits or other factual evidence, *see* Doc. 35; however, it does refer to a set of affidavits filed separately, Doc. 25, and to facts stated in Mr. Young's verified amended complaint, Doc. 1-2. In addition, Mr. Young recently filed another affidavit, Doc. 50, which the Court and Defendants construe as a Rule 56(d) affidavit; Defendants' response to this affidavit contains additional evidence. Doc. 51. Given the difficulties of *pro se* representation and the fundamental standard of summary judgment— "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)—the Court considers all evidence when determining whether there is a genuine factual dispute, even in the absence of citation, so long as there is a clear correspondence between the dispute and record evidence. *See* FED. R. CIV. P. 56 (c)(1) (assertion of genuine dispute must be supported by citation); *but see* FED. R. CIV. P. 56(c)(3*)* ("The court need consider only the cited materials, but it may consider other materials in the record."); *cf. also Sawyer v. Am. Fedn. of Govt. Employees, AFL-CIO*, 180 F.3d 31, 34 (2d Cir. 1999) ("it is not obvious to a layman that a motion for summary judgment supported by affidavits requires a response supported by similar affidavits in order to preserve factual disputes for trial . . . .").

---

[4] Defendants Shipman and Brown also argue that summary judgment should be granted for any negligence claims, should Mr. Young's complaint be liberally construed to state any such claims. Doc. 14 at 19–21. Because the Court does not so construe Mr. Young's complaint, it does not further address these arguments.

**III.**   **Legal Standard**

    **A.**  **Standard for Summary Judgment**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). A fact is "material" if under the substantive law it could affect the outcome of a lawsuit, and an issue is "genuine" if a rational juror could find in favor of the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 378

(2007). The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Summary judgment may be granted where "the [nonmoving party's] evidence is merely colorable, or is not significantly probative." *Id.* at 249–50 (internal citations omitted).

### B.  Standard for 12(b)(6) Motion to Dismiss

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "'a court must accept as true all of the allegations contained in a complaint,'" this rule does not apply to legal conclusions. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id.* (citation omitted). A complaint survives only if it "states a plausible claim for relief." *Id.* (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). In determining whether to grant the motion, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

IV.    **Discussion**

   A.    **Mr. Young has only exhausted the grievance process with regard to his**
         **allegations that he has been deprived of tobacco to pray on since May 2021.**

   The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect

to prison conditions under section 1983 . . . or any other federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a). This provision requires prisoners to *properly* exhaust

administrative remedies before bringing a suit under federal law. *See generally Woodford v. Ngo*,

548 U.S. 81 (2006). In other words, inmates who do not comply with each step of a facility's

grievance procedure permanently forfeit their right to litigate the relevant grievance,

constitutional or otherwise, in federal court. Although the PLRA exhaustion requirement is not

jurisdictional, *see id.* at 101, courts have no discretion to consider an inmate's special

circumstances. So long as an administrative remedy was "available," a district court must dismiss

claims where an inmate has not exhausted that remedy. *See Ross v. Blake*, 578 U.S. 632, 639, 648

(2016).

   Similarly, N.M. STAT. ANN. § 33-2-11(B) provides that no New Mexico court shall:

> acquire subject-matter jurisdiction over any complaint, petition, grievance or civil
> action filed by any inmate of the corrections department with regard to any cause
> of action pursuant to state law that is substantially related to the inmate's
> incarceration by the corrections department until the inmate exhausts the
> corrections department's internal grievance procedure.

This limitation is "jurisdictional [ ] as to statutorily created rights." *Anderson v. State*,

2022-NMSC-019, ¶ 19, 518 P.3d 503, 510. Even where it is not jurisdictional, courts

should "defer to the administrative agency where the interests of justice are best served by

permitting the agency to resolve factual issues within its peculiar expertise"; that is, courts

should consider dismissing unexhausted claims even if they do not arise from a statutorily

created right. *Id.* ¶ 21, 518 P.3d at 511; *see also Lucero v. Centurion Correctional Healthcare of New Mexico, LLC,* 2023-NMCA-050, ¶ 11, 534 P.3d 258, 262 (inmate was required to exhaust NMDC grievance procedure with respect to common law negligence claim).

Defendants assert, and Mr. Young does not dispute, *see* Doc. 35 at 29, ¶ 48, that Mr. Young has failed to exhaust his administrative remedies except with respect to his claim that he was not provided tobacco for weekly prayer starting in May 2021. Doc. 14 at 24; *see also* UMFs 36–48. I therefore recommend that the Court dismiss without prejudice all of Mr. Young's state and federal claims that are based on failures to conduct talking circles or provide tobacco on earlier dates. *See Gallagher v. Shelton,* 587 F.3d 1063, 1068 (10th Cir. 2009) ("[A] dismissal based on a failure to exhaust administrative remedies should be without prejudice."); *Lucero,* 2023-NMCA-050, ¶16, 534 P.3d at 263 (likewise under New Mexico state law).

**B.   AFA Brown is not entitled to summary judgment on Mr. Young's RLUIPA claim.**

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). To successfully plead a RLUIPA claim, a plaintiff must show (1) an exercise of a sincerely held religious belief upon which (2) the government has imposed a substantial burden. *Yellowbear v. Lampert*, 741 F.3d 48, 53–56 (10th Cir. 2014). If both elements are established, the burden of persuasion shifts to the government, which must show that the burden imposed (1) serves a compelling governmental interest, and (2) is the least restrictive means of furthering that interest. *Id.* at 56–57.

"RLUIPA does not provide a cause of action against individual defendants in their individual capacities." *Stewart v. Beach*, 701 F.3d 1322, 1334 (10th Cir. 2012). Therefore, to the extent that Mr. Young intended to plead individual capacity RLUIPA claims against any Defendants, I recommend that the Court grant summary judgment on those claims. However, I understand Mr. Young to be suing Defendants in their official capacities.

Mr. Young clearly establishes—and Defendants do not dispute—his sincerely motivated religious exercise. "The use of tobacco in praying to [Mr. Young's] Creator is essential to meaningfully practicing [his] sincerely held religious beliefs according to [his] Native American traditions and rituals." Doc. 1-2 ¶ 7. Mr. Young prays upon tobacco between sweat lodge ceremonies; the tobacco is a vessel that holds his prayers until a sweat lodge ceremony, and he smokes the tobacco "to deliver his prayers to his Creator." *Id.* ¶¶ 12–13; Doc. 35 at 3. Praying on tobacco during the week, between ceremonies, is plainly a sincerely motivated exercise of Mr. Young's religious belief.

Defendants argue that Mr. Young cannot meet his burden of demonstrating that they, in their official capacities, have imposed a substantial burden on Mr. Young's ability to pray on tobacco during the week. I agree that Mr. Young cannot show that Chaplain Shipman or Gary Maciel has imposed such a burden. However, there are genuine issues of material fact regarding whether AFA Brown imposed such a burden.

A government—including "any . . . person acting under color of state law," 42 U.S.C.A. § 2000cc-5(4)(A)(iii)—imposes a burden on religious exercise that is substantial when the government:

> (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief—for example, by presenting an illusory or Hobson's choice where the only realistically possible

11

course of action available to the plaintiff trenches on sincere religious exercise. *Yellowbear*, 741 F.3d at 55 (citations omitted). There is little question that Mr. Young has been prevented from participating in an activity—prayer on a medicine pouch containing tobacco between sweat lodge ceremonies—motivated by a sincerely held religious belief. The evidence in the record creates a genuine issue of material fact regarding whether AFA Brown imposed this burden.

Since November 2019, before Mr. Young arrived at LCCF, AFA Brown has been responsible for dispensing tobacco to verified inmates for religious programming purposes. UMF 17. Chaplain Shipman did not participate in the dissemination of tobacco at LCCF. UMF 26. Although he failed to assist Mr. Young to procure tobacco upon which to pray during the week, there is no evidence that he *prevented* Mr. Young from procuring tobacco. Therefore, Mr. Young does not show that Chaplain Shipman imposed a substantial burden on his religious exercise, and Chaplain Shipman is entitled to summary judgment in his favor on this claim.

Likewise, Mr. Young's only allegation against Director Maciel is that he denied Mr. Young's grievance. Doc. 1-2 ¶¶ 44. 54; Doc. 15 at 2–3; *see also* Doc. 13-25 at 13. It is plausible that handling a grievance could create a substantial burden for purposes of a RLUIPA claim. *Cf. AlAmiin v. Morton*, 528 F. App'x 838 (10th Cir. 2013) (dismissing on other grounds claims against an official who enforced policy through her handling of grievances). However, Mr. Young's unelaborated allegation does not show that Director Maciel imposed such a burden. I therefore recommend that the Court dismiss Mr. Young's RLUIPA claim against Director Maciel for failure to state a claim.

Defendants proffer several facts to support their claim that Mr. Young "cannot demonstrate his religious exercise has been substantially burdened [by AFA Brown]." Doc. 14 at 7. The particular facts proffered, however, imply a basic misunderstanding of Mr. Young's claim,

a misunderstanding which seems to mirror the dynamics that have given rise to this entire case. Defendants focus on AFA Brown's provision of tobacco "sufficient for use during the sweat lodge ceremony," stating that he delivers tobacco and herbs prior to each ceremony and has increased the amount of tobacco provided to keep pace with increased attendance at more recent ceremonies. Doc. 14 at 6–7. They further argue that "[w]hile AFA Brown has declined to provide [Mr. Young] additional tobacco to smoke throughout the week as the mood strikes, this simply cannot be regarded as a substantial burden on his religious exercise." *Id.* at 6. These statements comport with AFA Brown's understanding of Mr. Young's complaint: "that the amount of tobacco [AFA Brown] provided for sweat lodge was not sufficient" and that "Mr. Young wanted [AFA Brown] to give the group much more tobacco so that he could keep a significant quantity for his own personal use" and "to smoke . . . in between sweat lodge ceremonies."[5] Doc. 40-1 at 1–2. They do not, however, respond to the burden alleged in Mr. Young's amended complaint. Although Mr. Young does complain of other burdens on his religious exercise, the claim most consistently articulated—and the only claim administratively exhausted, per Defendants' own argument—is that he has been unable to pray during the week because he has been deprived of small amount of tobacco to put in his medicine pouch in contravention of NMCD policy. *See, e.g.*, Doc 1-2 ¶¶ 7, 13, 14, 24, 29, 32, 38, 40; *see also* Doc. 13-24 at 1. Defendants' proffered facts are simply unresponsive to this claim.

Defendants next state that "AFA Brown has informed [Mr. Young] on multiple occasions that if he wants tobacco to carry in his medicine pouch or for his spiritual bundle, he may request the same from AFA Brown." Doc. 14 at 7 (citing UMF 22). This fact, if undisputed, might undermine Mr. Young's showing of substantial burden. However, this fact is disputed. Mr.

---

[5] Mr. Young "do[es] not need the tobacco to smoke throughout the week" and "has not requested to smoke tobacco anywhere other than the sweat lodge area." Doc. 35 at 3; Doc. 1-2 ¶ 40.

Young disagrees with UMF 22, citing to an affidavit by Ivan Coles, a similarly positioned Native American inmate, and emphatically states that AFA Brown has never told him that he could request tobacco for his medicine pouch. Doc. 35 at 21; *see also id.* at 4–5. He likewise disputes AFA Brown's affidavit on this point. *Id.* at 35–36. Mr. Cole's affidavit, signed and sworn on August 8, 2023, reads as follows:

> In the entire time I've been attending Native American (Indigenous) ceremonies at Lea County Correctional Facility, Hobbs, New Mexico, and have been the Native Spiritual Advisor for Housing Two and Three, Mr. D. Brown has never told me I could come to him for a "pinch" of tobacco to be put in my medicine pouch, nor has anyone else told me this as of today's date.

Doc. 25 at 14.

Although Mr. Young has not produced an equivalent affidavit of his own, the Court, mindful of the procedural complexity of a motion for summary judgment for a *pro se* party, finds that Mr. Young's direct disputes alongside Mr. Cole's sworn statement are not insubstantial. Moreover, Mr. Young elsewhere has produced sworn statements that accord with this dispute. In his verified amended complaint, Mr. Young states that he "has met with AFA Brown on numerous [occasions] and Brown refuses to provide an adequate amount of tobacco." Doc 1-2 ¶ 52. In his Rule 56(d) affidavit, Mr. Young states that, starting in October 2023, AFA Brown has issued tobacco for his medicine pouch and told him "that it was just a misunderstanding that prevented him from issuing tobacco." Doc. 50 at 3. This is consistent with AFA Brown's affidavit, attached to Defendants' reply, in which he swears that he has "never denied any [approved] inmate's request for a pinch of tobacco for his medicine bag," and that he has recently given a pinch of tobacco to Mr. Young. Doc. 40-1 at 1–2. In fact, AFA Brown apparently has been inundated by requests from Native American inmates for tobacco for their pouches and consequently has decided that tobacco for medicine pouches is best distributed at the end of each

sweat lodge.[6] Doc. 51 at 3–4. This recent development is incongruous with AFA Brown's

original statement that he has "informed [Mr.] Young many times that if he wants tobacco to

carry in his medicine pouch or for his spiritual bundle, he can request it from me."[7] Doc. 13-1 at

5. Given the foregoing evidentiary inconsistencies and Mr. Young's disagreement with UMF 22,

the Court finds a genuine dispute as to whether AFA Brown imposed a substantial burden on Mr.

Young's religious exercise by failing or refusing to provide Mr. Young sufficient tobacco—a

pinch—to pray on between sweat lodge ceremonies.

Finally, Defendants state that AFA Brown has informed Mr. Young that he can order

tobacco from an approved vendor or have family members send tobacco to the facility. Doc. 14 at

7. The relevance of these facts to the substantial burden imposed on Mr. Young's ability to pray

on tobacco throughout the week is undermined by a subsequent statement: "Any . . . tobacco

delivered to LCCF must be turned over to AFA Brown for storage and distribution, and will be

shared with all sweat lodge participants." *Id.* Although Mr. Young does complain about the

burden imposed on inmates or their families by requiring them to supply tobacco and herbs from

expensive suppliers, Doc. 1-2 at 10, ¶¶ 55–57, the question of substantial burden centers on his

inability to obtain even minimal amounts of tobacco for his medicine pouch. There is no

---

[6] It thus appears that the burden on Mr. Young's religious exercise has, for the moment, been
lifted. Nonetheless, Mr. Young's claims are not yet moot. "Voluntary cessation does not moot a
case or controversy unless subsequent events make it absolutely clear that the allegedly wrongful
behavior could not reasonably be expected to recur," *Parents Involved in Community Schools v.
Seattle School Dist. No. 1*, 551 U.S. 701, 719 (2007), and Defendants "bear[] the heavy burden of
persuading the court that the challenged conduct cannot reasonably be expected to start up again,"
*Ind v. Colorado Dept. of Corrections*, 801 F.3d 1209, 1214 (10th Cir. 2015) (internal alterations
and citation omitted). Here, "even if [Mr. Young] now has what he originally sought . . . [the
Defendants are] not bound by an injunction entered in [his] favor . . . ." *Wiggins v. Hoisington*,
No. 1:11-cv-00967-KG-KK, 2015 WL 13665442, at *11 (D.N.M. Feb. 27, 2015) (internal
quotation marks omitted) (citing *AlAmiin v. Morton*, 528 F. App'x. 838, 842 (10th Cir. 2013)).

[7] Notably, this statement is also inconsistent with AFA Brown's statement that Mr. Young "never
mentioned his medicine bag until very recently." Doc. 40-1 at 2.

indication that this burden would be eliminated if Mr. Young arranged for more tobacco to be sent to LCCF and held by AFA Brown.

Having considered each fact proffered by Defendants on the issue of substantial burden, I find that there is, at the very least, a genuine dispute as to whether Mr. Young can show that AFA Brown has imposed a substantial burden on his religious exercise. Defendants have not negated Mr. Young's claim, nor have they "point[ed] to an absence of evidence to support [his] claim." *Kannady*, 590 F.3d at 1169. Mr. Young has produced sufficient evidence that reasonably could support the finding that AFA Brown substantially burdened his religious exercise by failing or refusing to provide him sufficient tobacco to pray on between sweat lodge ceremonies. *See Anderson*, 477 U.S. at 252 ("The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict").

This genuine dispute would be immaterial if Defendants demonstrated that there is no genuine dispute that this burden (1) serves a compelling governmental interest and (2) is the least restrictive means of furthering that interest. *Yellowbear*, 741 F.3d at 56–57. However, Defendants do not demonstrate this.

Defendants argue that "[it] is well settled that prison officials have a compelling government interest in maintaining institutional security," an interest which is furthered by "measures implemented by prison officials to prevent the introduction of contraband into the facility." Doc. 14 at 8. There is no question that this is true. *See, e.g.*, *AlAmiin*, 528 F. App'x. at 842, 843–45 (affirming district court's conclusion that facility's "restriction on in-cell and personal possession of prayer oil served a compelling governmental interest in maintaining prison security" by limiting the introduction of contraband into the facility). Defendants, after describing the general proscription on tobacco in NMCD facilities and the limited exception afforded for verified Native American inmates, further argue that:

> Providing Native American inmates a limited quantity of tobacco (up to one ounce) for use during their weekly sweat lodge ceremony and a pinch of tobacco to carry in their medicine bags is the least restrictive means for safeguarding against the introduction of larger quantities of contraband tobacco into inmate housing.

Doc. 14 at 9.[8] Again, I agree. Mr. Young has presented no evidence that a less restrictive policy is available, and these policies are not plainly more restrictive than analogous policies that have met the standards of RLUIPA. *See, e.g.*, *Smith v. Diez*, No. 2:20-CV-0071-JAM-DMC-P, 2020 WL 12894880, at *4 (E.D. Cal. July 23, 2020) (unpublished); *Brunskill v. Boyd,* 141 F. App'x. 771, 776 (11th Cir. 2005).

Defendants, however, have presented no evidence that shows that these policies are responsible for the burden on Mr. Young's religious exercise. To the contrary, the burden imposed on Mr. Young has resulted from AFA Brown's failure to follow these policies, at least until recently. The policies expressly permit Mr. Young to keep tobacco in his medicine pouch. Doc. 13-4 at 5–6. The available evidence, viewed in the light most favorable to Mr. Young, *see Scott*, 550 U.S. at 378, suggests that AFA Brown has failed to give Mr. Young tobacco for his medicine pouch when requested.[9] Whether this is a result of "miscommunication" or an outright

---

[8] Defendants further state that "[w]hile [Mr. Young] would apparently like to be able to visit the sweat lodge numerous times throughout the week to smoke additional tobacco, this is simply not feasible." Doc. 14 at 9. The Court does not read Mr. Young's amended complaint as making this claim. In his amended complaint, Mr. Young states he "has not requested to smoke tobacco anywhere other than the sweat lodge area. This has never been an issue." Doc. 1-2 at 8, ¶ 40. He further states that while the amount of tobacco provided at the sweat lodge ceremony is minimally sufficient for that ceremony, it "does not provide for each individual participant of the ceremony to keep a small amount for their medicine pouch/bag or spiritual bundle." *Id.* ¶ 41. Thus, it does not appear that Mr. Young is claiming he should be allowed to visit the sweat lodge throughout the week, only that he be provided tobacco to pray on between sweat lodge ceremonies.

[9] In the departmental appeal of his exhausted administrative grievance, Mr. Young specifically states that he has not been provided tobacco for his medicine pouch. *See* Doc. 13-25 at 5–7.

refusal to abide by the policies, the failure to provide the small amount of tobacco does not further a compelling government interest. Defendants have failed to show that there is no genuine dispute of material fact that AFA Brown's alleged refusal to provide an adequate amount of tobacco (a pinch) for Mr. Young to pray on between sweat lodges both serves a compelling governmental interest and is the least restrictive means of furthering that interest. I therefore recommend that the Court deny Defendants' Motion for Summary Judgment with respect to Mr. Young's RLUIPA claim against AFA Brown in his official capacity.

Regarding damages, Defendants are correct that the only relief available to Mr. Young is injunctive relief against AFA Brown in his official capacity. *See AlAmiin*, 528 F. App'x at 842; *see also Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) ("RLUIPA does not permit money damages against state prison officials"). Thus, AFA Brown is entitled to summary judgment in his favor to the extent Mr. Young seeks money damages based on his RLUIPA claim.

### C. <u>The Court should grant summary judgment on Mr. Young's NMRFRA claims.</u>

Per the NMRFRA,

A government agency shall not restrict a person's free exercise of religion unless:

A. the restriction is in the form of a rule of general applicability and does not directly discriminate against religion or among religions; and

B. the application of the restriction to the person is essential to further a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

N.M. STAT. ANN. 1978 § 28-22-3. There are obvious similarities between this statute and RLUIPA; although some language differs, NMRFRA contains the four elements required to establish liability under RLUIPA.

Defendants, however, point out an important difference between these statutes. Unlike RLUIPA, which defines "government" to include persons acting under color of state law, 42 U.S.C. § 2000cc-5(4)(A)(iii), NMRFRA defines "government agency" as "the state or any of its political subdivisions, institutions, departments, agencies, commissions, committees, boards, councils, bureaus or authorities." N.M. STAT. ANN. § 28-22-2(B). Based on this difference, and citing *Elane Photography, LLC v. Willock*, 2012-NMCA-086, ¶¶ 45-47, 284 P.3d 428, 444–45, Defendants argue that Mr. Young "is not entitled to relief under [NMRFRA] as against" AFA Brown and Chaplain Shipman because they are "individuals, employed by a private corporation," not government agencies. Doc. 14 at 13–14. I agree.

Though it does not definitionally include employees among the suable constituents of government agencies, NMRFRA includes employees among those liable for statutory violations: "Immunity from liability of the government agency and its employees is waived for an action brought pursuant to this section." N.M. STAT. ANN. § 28-22-4(B). The natural reading of this provision is that NMRFRA authorizes official capacity suits against employees of the State of New Mexico. *Cf., e.g., Hunnicutt v. Peters*, No. 2:20-cv-00206-MV-CG, 2022 WL 457879 (D.N.M. Feb. 15, 2022) (analyzing an NMRFRA claim without distinguishing between private parties, state bodies and official capacity defendants); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official"). However, AFA Brown and Chaplain Shipman are not state employees; they are employees of GEO Group, a private contractor for the state. To my knowledge, no New Mexico court has considered the question of whether employees of a private employer fulfilling a role traditionally occupied by the state—like the administration of a correctional facility—may be treated as state employees for the purposes of NMRFRA. I see no indication in the text of NMRFRA or the limited caselaw interpreting it that the statute includes such employees. Because

AFA Brown and Chaplain Shipman are not state employees and are not suable under NMRFRA,

I recommend that the Court grant summary judgment in their favor on Mr. Young's NMRFRA

claims.

Director Maciel is a state employee and therefore suable in his official capacity. However,

bearing in mind that the inquiries under RLUIPA and NMRFRA are closely analogous, I again

find that Mr. Young's limited allegations against Director Maciel are insufficient to support a

claim. I therefore recommend that the Court dismiss Mr. Young's NMRFRA claim against

Director Maciel.

### D.  The Court should grant summary judgment on Mr. Young's NACA claims.

The Native American Counseling Act provides that:

> Native American religions shall be afforded by the corrections department the
> same standing and respect as Judeo-Christian religions. The practice of native
> American religion shall be permitted at each state corrections facility, including
> women's corrections facilities, to the extent that it does not threaten the
> reasonable security of the corrections facility.

N.M. STAT. ANN. § 33-10-4(A). The act enumerates a range of accommodations that state

corrections facilities shall make for Native American inmates. Of particular relevance here,

NACA provides that "a state corrections facility shall permit access on a regular basis, for at least

six consecutive hours per week to . . . items and materials used in religious ceremonies provided

by the inmate or a spiritual advisor, including . . . tobacco . . . ." *Id.* § 33-10-4(B).

Defendants argue that "the NACA does not include an express private enforcement

mechanism," and a cause of action should not be implied. Doc. 14 at 15–16. Mr. Young does not

specifically respond to this argument*. See generally* Doc. 35. Because Defendants are correct that

NACA does not include an express private enforcement mechanism, the Court would have to find

one by implication. *See Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, ¶ 30, 346 P.3d 1136,

1146. To imply a private cause of action, the Court considers (1) whether "the statute was enacted

for the special benefit of a class of which the plaintiff is a member"; (2) whether there is "any indication of legislative intent, explicit or implicit, to create or deny a private remedy"; and (3) whether a private remedy [would] either frustrate or assist the underlying purpose of the legislative scheme." *Id.* ¶ 31, 346 P.3d at 1146. Although Defendants concede that Mr. Young is a member of the class for whose benefit NACA was enacted, *see* Doc. 14 at 16, I am unaware of any "indication[s] of legislative intent, explicit or implicit, to create . . . a private remedy," *Yedidag*, 2015-NMSC-012, ¶ 31, 346 P.3d at 1146. The last factor—whether allowing a private remedy would frustrate the purpose of the legislative scheme—is inadequately briefed, and the Court is without sufficient information to address this question. I therefore recommend that the Court grant summary judgment in favor of Defendants Shipman and Brown on Mr. Young's NACA claims and dismiss the NACA claims against Director Maciel.

E.  **AFA Brown is not entitled to summary judgment on Mr. Young's claim under article II, section 11 of the New Mexico Constitution.**

Mr. Young pleads claims under two provisions of the New Mexico Constitution but provides no specific allegations or argument regarding these provisions. *See generally* Doc. 1-2; *id.* at 1. Article II, section 11 of the New Mexico Constitution provides:

> Every man shall be free to worship God according to the dictates of his own conscience, and no person shall ever be molested or denied any civil or political right or privilege on account of his religious opinion or mode of religious worship. No person shall be required to attend any place of worship or support any religious sect or denomination; nor shall any preference be given by law to any religious denomination or mode of worship.

N.M. CONST. art. II, § 11. Article XXI, section 1 provides:

> Perfect toleration of religious sentiment shall be secured, and no inhabitant of this state shall ever be molested in person or property on account of his or her mode of religious worship. Polygamous or plural marriages and polygamous cohabitation are forever prohibited.

N.M. CONST. art. XXI, § 1.

Defendants argue that neither provision is self-executing, and that Mr. Young therefore can pursue a civil claim for constitutional violations only if the New Mexico legislature has enacted a statute authorizing such a claim. Doc. 14 at 16–17. They further argue that although the New Mexico Civil Rights Act ("NMCRA"), N.M. STAT. ANN. §§ 41-4A-1, *et seq.*, creates a private right of action to enforce the bill of rights of the New Mexico Constitution, it only authorizes suits against a public body, not against individuals. Doc. 14 at 17–18. Finally, Defendants argue that, even if Mr. Young does have a constitutional cause of action against them, he could not prevail on either claim because 1) "[t]here is no reason to conclude the New Mexico Constitutional provisions cited in the Amended Complaint afford broader protections than those provided under the First Amendment," and 2) Mr. Young does not show a substantial burden on religious exercise, as required to prevail under the First Amendment. *Id.* at 19.

"The decisive question [for a constitutional claim] is whether the provision is self-executing . . . ." *Jaramillo v. City of Albuquerque*, 1958-NMSC-107, ¶ 3, 329 P.2d 626. "A constitutional provision may be said to be self-executing when it takes immediate effect and ancillary legislation is not necessary to the enjoyment of the right given, or the enforcement of the duty imposed. In short, if a constitutional provision is complete in itself, it executes itself." *Bounds v. State*, 2011-NMCA-011, ¶ 37, 149 N.M. 484, 495, 252 P.3d 708, 719 (internal quotation marks and citation omitted). In contrast, a provision—or even a particular sentence of a broader provision—"must be considered as not self-executing inasmuch as it merely indicates a principle without laying down rules having the force of law." *State ex rel. Noble v. Fiorina*, 1960-NMSC-107, ¶ 4, 67 N.M. 366, 368, 355 P.2d 497, 498.

I agree that article XXI, section 1 does not lay down sufficiently specific rules and so is not self-executing. Likewise, I agree that the NMCRA expressly excludes claims, like those brought by Mr. Young, against individuals: "Claims brought pursuant to the New Mexico Civil

Rights Act shall be brought exclusively against a public body." N.M. STAT. ANN. § 41-4A-3(C).

Further, the NMCRA only applies to rights secured by the bill of rights of the New Mexico

Constitution, N.M. STAT. ANN. § 41-4A-3(A), of which article XXI, section 1 is not a part. I

therefore recommend that the Court grant summary judgment in favor of Defendants Brown and

Shipman on Mr. Young's claims under article XXI, section 1.

The New Mexico Supreme Court has not specifically held that article II, section 11 is self-

executing. However, New Mexico courts and the Tenth Circuit have treated article II, section 11

as "co-extensive with its federal counterpart," the Establishment and Free Exercise Clauses of the

First Amendment. *Elane Photography, LLC*, 2012-NMCA-086, ¶ 33, 284 P.3d at 441; *see also*

*Friedman v. Bd. of Cnty. Com'rs of Bernalillo Cnty.*, 781 F.2d 777, 792 (10th Cir. 1985)

("[U]pon examination of New Mexico cases under this provision . . . the goals of N.M. Const. art.

II, § 11 are the same as those served by the Establishment and Free Exercise Clauses of the First

Amendment."); *Duffy v. Las Cruces Pub. Schools*, 557 F. Supp. 1013, 1022–23 (D.N.M. 1983)

(New Mexico statute providing for daily moment of silence in school violated the Establishment

Clause and article II, § 11 of the New Mexico Constitution); *Moses v. Skandera*, 2015-NMCA-

036, ¶ 34, 346 P.3d 396, 405 ("because the goals of Article II, Section 11 of the New Mexico

Constitution serve the same goals as the Free Exercise and Establishment Clauses of the First

Amendment, New Mexico courts have cited First Amendment cases to address both the United

States and state constitutions"), *reversed on other grounds*, 2015-NMSC-036, 367 P.3d 838.

Because the Supreme Court has held that the First Amendment is self-executing, *see City of*

*Boerne v. Flores*, 521 U.S. 507, 524 (1997) ("The first eight Amendments to the Constitution set

forth self-executing prohibitions on governmental action . . . ."), *superseded by statute on other*

*grounds as recognized in Ramirez v. Collier*, 595 U.S. 411, 424 (2022), it follows that article II,

section 11 also is self-executing. *See Kellum v. Bernalillo County*, Doc. No. 1:14-cv-00163-RB-

CG, 2015 WL 12861360, at *3 (N.M.D. Nov. 9, 2015) (unpublished) (because Eighth Amendment is self-executing, it follows that corresponding provision in the New Mexico Constitution is self-executing). Further, the New Mexico Supreme Court and other courts have applied article II, section 11 as if it were self-executing. *See, e.g.*, *Pruey v. Dept. of Alcoholic Beverage Control of New Mexico*, 1986-NMSC-018, ¶¶ 12–15, 104 N.M. 10, 13, 715 P.2d 458, 461 (applying federal Establishment Clause test to determine whether state statute regulating alcohol sales on Sundays violates article II, section 11 of the New Mexico Constitution and holding it did not); *City of Las Cruces v. Huerta*, 1984-NMCA-120, ¶¶ 18–23, 102 N.M. 182, 186, 692 P.2d 1331, 1335 (holding that zoning ordinance that prevented church from operating school on its property did not violate Free Exercise Clause or article II, section 11 of the New Mexico Constitution); *Duffy*, 557 F. Supp. at 1022–23 (New Mexico statute providing for daily moment of silence in school violated the Establishment Clause and article II, section 11 of the New Mexico Constitution).

Defendants cite *Bell v. Board of Educ. of the Albuquerque Public Schools*, 2008 WL 2397670, *8 (D.N.M. Jan. 30, 2008) (unpublished), to support their assertion that "rights guaranteed under the New Mexico Constitution are not self-executing." Doc. 14 at 16–17. *Bell*, however, simply held that the plaintiff could not seek monetary damages against APS for denying him the free and appropriate education guaranteed by the New Mexico Constitution, but that he *could* seek injunctive relief. *See Bell*, 2008 WL 2397670, at *8. None of the cases cited by Defendants, *see* Doc. 14 at 16–17, hold that article II, section 11 of the New Mexico Constitution is not self-executing.

Further, although there does not appear to be a New Mexico Supreme Court or Court of Appeals case directly on point, private-prison management companies and their employees may be held liable for federal constitutional violations because they are performing functions which

24

traditionally are the exclusive prerogative of the state. *See Spurlock v. Townes*, 661 F. App'x 536, 538 n.2 (10th Cir. 2016) (finding no reason to question parties' assumption that private prison-management company operating private women's prison in New Mexico, and its employees, could be held liable for violating the Eighth Amendment). It follows that private-prison management companies likewise may at least be enjoined from violating state constitutional provisions.[10] Indeed, Mr. Young argues in response to Defendants' constitutional argument that "[b]oth Shipman and AFW Brown are acting agents of the New Mexico Corrections Department." Doc. 35 at 9.

Because it appears to the Court that article II, section 11 is self-executing, Mr. Young's ability to enforce his right to freely exercise his religion while incarcerated is not dependent on his ability to bring a claim under the New Mexico Civil Rights Act. Accepting Defendants' argument that article II, section 11 does not create protections that extend beyond those of the First Amendment,[11] I rely on the analysis performed above regarding Mr. Young's RLUIPA claims. Although RLUIPA applies a more demanding standard to the government's rationale than that imposed by the First Amendment, "RLUIPA incorporates the 'substantial burden' test used in First Amendment inquiries and expressly refers to the Free Exercise Clause in allocating its burden of proof." *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006); *see also Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021) ("Congress intended for courts to interpret the

---

[10] Mr. Young seeks both injunctive relief and damages. Doc. 1-2 at 11. Because the parties do not specifically address what relief Mr. Young may be entitled to under a self-executing provision of the New Mexico Constitution, *see* Doc. 14 at 16–17; Doc. 42 at 6–7; *see generally* Doc. 35, it would be premature for the Court to rule on this issue.

[11] At least one judge has suggested that article II, section 11 "may provide broader protection" than the First Amendment; however, that question is not squarely presented here, and the Court will leave "determination of its scope . . . for another day." *Elane Photography, LLC*, 2012-NMCA-086, ¶ 55, 284 P.3d at 446–47.

RLUIPA term 'substantial burden' as no broader than the Supreme Court's assessment of what constitutes a 'substantial burden' under the First Amendment's Free Exercise Clause.") (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)). I already have found that there is a genuine dispute of material fact regarding whether AFA Brown imposed a substantial burden on Mr. Young's religious exercise, but no such dispute regarding Chaplain Shipman or Director Maciel. I therefore recommend that the Court deny summary judgment on this claim with respect to AFA Brown and grant it with respect to Chaplain Shipman. I recommend that the Court dismiss the state constitutional claims against Director Maciel for failure to state a claim.

**F.   Mr. Young's Rule 56(d) affidavit does not provide a basis for additional discovery.**

In response to a nonmovant's affidavit or declaration that shows that the nonmovant cannot present facts essential to the opposition of a motion for summary judgment, the Court may, *inter alia*, permit additional discovery to be completed before ruling on the motion. FED. R. CIV. P. 56(d). "In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) must specify in the affidavit (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021) (internal quotation marks and citation omitted). The Court "may not look beyond the affidavit" for these required elements. *Id.* (quoting *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017)).

Mr. Young's affidavit filed January 19, 2024 (Doc. 50),[12] which the Court construes as a Rule 56(d) affidavit, does not provide the required elements. Mr. Young seeks to discover a broad

---

[12] This affidavit was filed four days after the deadline set by the Court. *See* Doc. 49. However, given that a) Mr. Young mailed his affidavit on January 12, 2024, several days before the deadline, *see* Doc. 50 at 7, and b) receives no relief, the Court does not consider this untimeliness.

array of information about AFA Brown and Chaplain Shipman.[13]  He seeks this information to

show that AFA Brown "denied Native Americans access to tobacco" during his tenure in

Clayton. Doc. 50 at 1–2. He also seeks all informal complaints he has filed while incarcerated at

LCCF,[14] and all informal complaints filed since 2019 against AFA Brown or Chaplain Shipman

by any Native American inmates at LCCF that relate to "sacred tobacco and Native American

religion." Doc. 50 at 2. Even setting aside the extremely limited relevance of this sweeping

discovery to Mr. Young's claims, which arise only from burdens on his personal religious

practice since May 2021, Mr. Young does not identify a single probable fact that might result

from this discovery. "Speculation cannot support a Rule 56(d) motion." *F.D.I.C. v. Arciero*, 741

F.3d 1111, 1116 (10th Cir. 2013). I therefore must deny Mr. Young's Rule 56(d) motion.

## V.    <u>Conclusion</u>

For the foregoing reasons, I recommend the Court GRANT Gary Maciel's Motion to

Dismiss (Doc. 15) and dismiss all claims against him. I recommend that the Court dismiss

without prejudice all Mr. Young's unexhausted claims, specifically his state and federal claims

based on failures to conduct talking circles and failures to provide tobacco before May 2021. I

recommend the Court GRANT in part and DENY in part Defendants Mark Shipman and David

Brown's Motion for Summary Judgment (Doc. 14). I recommend that the Court DENY the

motion with regard to Mr. Young's RLUIPA claim and his claim under article II, section 11 of

---

[13]  This information would include informal complaints lodged against AFA Brown and Chaplain
Shipman, filed either during prior employment at a prison in Clayton, New Mexico, or since 2019
at LCCF; and AFA Brown's "e-mails, texts, metadata [and] any and all correspondence ordered
by him" in Clayton, LCCF, or Arizona. Doc. 50 at 1–2.

[14]  Mr. Young implies that Defendants' *Martinez* report omits some informal complaints but
provides no information as to what might have been omitted. Doc. 50 at 2.

the New Mexico Constitution against defendant David Brown. I recommend that the Court

GRANT the motion in all other respects. Finally, I DENY Mr. Young's Rule 56(d) motion.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).   Written objections must be both timely and specific.   *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).   A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.   *Id*.   In other words, if no objections are filed, no appellate review will be allowed.

---

_____
UNITED STATES MAGISTRATE JUDGE